[Sac. No. 3641. In Bank.—October 14, 1924.]

# SACRAMENTO AND SAN JOAQUIN DRAINAGE DISTRICT, etc., et al., Petitioners, v. RAY L. RILEY, as Controller of the State of California, et al., Respondents; SUTTER BASIN COMPANY et al., Interveners.

[1] Reclamation—Sacramento and San Joaquin Drainage District—Emergency Condition—Diversion of Funds—Determination of Emergency.—The question as to whether or not the emergency conditions detailed in section 2 of the act of June 2, 1923, empowering the Reclamation Board to divert certain portions of the moneys to be paid over by the state treasurer to the state Reclamation Board, pursuant to the appropriation act of May 27, 1919, for use in liquidating *pro tanto* the indebtedness of the Sacramento and San Joaquin Drainage District, by the method provided in said act, into the "Sacramento-San Joaquin Drainage District fund, Sutter-Butte By-Pass Assessment No. 6, emergency fund," and to use the moneys thus made available in further construction work, still continues, was a question for the determination of the Reclamation Board in view of the amplitude of the powers granted to it in the several acts of the legislature providing for its creation and investing it with an almost unlimited jurisdiction in providing for the carrying forth of the vast project for the reclamation of the lands lying along the Sacramento River and its tributaries and of the flood control of those waters; and in the absence of the fullest averments and clearest showing that the facts creating the emergency for which the act was intended in some degree at least to provide a remedy have ceased to exist, the finding by the Reclamation Board of the continued existence of such emergency conditions implied in its demand for the further use of the moneys alleged to be available in the state treasury pursuant to the payment of further installments of said appropriation, is binding upon the parties in interest and the court.

[2] Id.—Performance of Work for State—Reliance upon Statute—Estoppel.—The only reliance which persons who perform work for the state or any subordinate statutory agency thereof can have is upon the language and proper interpretation of the statute under which their work is performed and the obligation in their favor arises, and they can acquire no rights by way of estoppel, either from their own mistaken interpretation of such statute or statutes or from the acts or statements of those officials or agencies of the state who are engaged in the exercise of its delegated police power and whose power to bind the state is defined by the acts under which they function.

[3] ID. — SUTTER-BUTTE BY-PASS PROJECT NO. 6 — COST — OBLIGATION OF LAND OWNERS—ASSESSMENTS—APPLICATION OF MONEYS—PAST CONSTRUCTION.—While the plan adopted for carrying the Sutter-Butte By-Pass Project No. 6 to its completion contemplated that the land owners should bear the larger part of the cost of so doing and that the money needed for the conduct and completion of such work should be raised by the levy of an assessment or series of assessments upon their respective properties within said district, and while the imposition of this burden also carried with it the right in these land owners to have the moneys paid in by them in the course of such assessment applied to the payment of the claims of contractors and others arising in the course of such constructive work, the several statutes relating to the levy and collection of such assessments did not and could not contemplate that the moneys so to be collected should be applied only to the payment of claims for past construction, since it was therein provided that it was only when such sums had been actually collected and paid into the proper fund that registered warrants drawn upon such fund were to be paid in the order of their registration.

[4] ID.—CONSTRUCTION OF ACT OF JUNE 2, 1923—TIME.—The language of the act of June 2, 1923, relating to the further use by the Reclamation Board of installments of the $3,000,000 appropriation provided for in the appropriation act of 1919 is broad enough in its terms to include a period of time extended until the bonds based upon the assessment shall have been sold and to embrace not only the moneys derived and derivable from said appropriation act, but also any sum or sums of money derivable from any acts of similar import, so long as the emergency defined in said act continues.

---

(1) 36 **C. J.**, p. 1028, sec. 85 (1926 Anno.).    (2) 21 **C. J.**, p. 1191, sec. 193.    (3) 36 **C. J.**, p. 1027, sec. 85.    (4) 36 **C. J.**, p. 1028, sec. 85.

PROCEEDING in Mandamus to compel the Controller of the State of California to authorize and direct the State Treasurer to credit a certain sum of money to the Sacramento and San Joaquin Drainage District Fund. Writ granted.

The facts are stated in the opinion of the court.

Stephen W. Downey and Fred R. Pierce for Petitioners.

U. S. Webb, Attorney-General, and R. T. McKissick, Deputy Attorney-General, for Respondents.

194 Cal.—40

Devlin & Devlin for Interveners Sutter Basin Company and Reclamation District No. 1500.

T. T. C. Gregory for Intervener American Bank of San Francisco.

Arthur C. Huston, *Amicus Curiae.*

RICHARDS, J.—This is an application for a writ of mandate wherein the petitioner Reclamation Board of California, acting for and on behalf of the Sacramento and San Joaquin Drainage District, as well as on its own behalf, petitions this court for the issuance of a writ of mandate commanding the respondent herein, Ray L. Riley as controller of the state of California to authorize and direct the respondent herein, Charles G. Johnson, as treasurer of the state of California, to credit the sum of $285,147.75 to the "Sacramento and San Joaquin Drainage District Fund, Sutter Butte By-Pass Assessment No. 6 Emergency Fund," and for such other and further relief as may be meet in the premises. The foregoing sum of $285,147.75 thus sought to be applied to the particular purposes set forth in said petition was received by the state treasurer on July 1, 1923, and is now being held by him under and pursuant to an act of the legislature of the state of California approved May 27, 1919 (Stats. 1919, p. 1209), appropriating the sum of $3,000,000 out of any moneys in the state treasury not otherwise appropriated, to be paid to the said Reclamation Board for the benefit of the said Sacramento and San Joaquin Drainage District in connection with Sutter-Butte By-Pass Project No. 6 thereof, and to be applied according to the terms of said act "as it is now or may hereafter be provided by law" by said board in connection with said project. The payments thus to be made by virtue of said appropriation were to be distributed over a period of eleven years, the first payment thereunder being the sum of $10,000 to be thus made and applied immediately upon said act becoming a law, the second of such payments, of $30,000, to be made on July 1, 1921, the third, in a like sum, on July 1, 1922, the fourth on July 1, 1923, and so on in like annual payments until the whole of said appropriation of $3,000,000 had been paid into the state treasury as provided for in said act. The

sum of $285,000 which is sought to be affected by the writ herein applied for consists of the main amount of the moneys so paid into the state treasury on July 1, 1923, pursuant to the terms of said act. The statute upon which the petitioner herein relies for the particular direction and purpose to which it seeks to have said sum devoted is the act of the legislature approved on June 2, 1923 (Stats. 1923, p. 640), amending section 34 of another act of the legislature also approved on May 27, 1919 (Stats. 1919, p. 1130), to the terms of which original and amendatory acts a more particular reference will hereinafter be made. The respondents herein have appeared through the attorney-general to resist the issuance of the writ sought herein, basing their and each of their objections thereto upon their interpretation of the scope and effect of the same statutes upon which the petitioners herein rely; and there have also appeared herein a number of *amici curiae* representing the land owners, the warrant holders and the creditors generally of said Drainage District, to oppose the issuance of said writ. The discussion of the subject as to whether this writ should or should not issue begins appropriately with the decision of this court in the case of *Sacramento & San Joaquin Drainage Dist. etc.* v. *Johnson et al.,* 192 Cal. 211 [219 Pac. 442], decided October 10, 1923, in which this court indulged in an exhaustive review of the history and development of the Sacramento and San Joaquin Drainage District, and particularly of Project No. 6 thereof as disclosed by the successive legislation touching the same between the years 1911 and 1923, inclusive, together with a full consideration of the rights and liabilities of said district and of the land owners therein and of the warrant holders and creditors generally thereof down to the date of said decision. That decision is hereby approved and made by reference a part of this decision. There are four principal points decided in that case which have an important bearing upon the decision in the instant case, viz.: First, that as to the rights of whatever creditors there may be of the said Drainage District arising out of contracts for work performed prior to the enactments of the legislature in 1913 (Stats. 1913, p. 252), 1915 (Stats. 1915, p. 1338), and 1917 (Stats. 1917, p. 1191), empowering the Reclamation Board to proceed with the levy and collection of an assessment or assessments

upon the lands lying within the boundaries of said district
for the purpose of paying for such work done therein as
could lawfully be charged against the said lands, the rights
of these creditors to payment of their claims being wholly
bounded by the statutes in being providing for such payment
prior to the said act of 1917; that as to the rights of con-
tract holders for work done thereunder between the date of
the passage and approval of the said act of 1917 and the
dates of the passage and approval of the several acts of
1919 the rights of this class of creditors to be paid for work
done under their said contracts, as well as the order of their
payment, were bounded and confined by the law as it ex-
isted between said dates, and which provided for the pay-
ment of these claims with moneys to be derived solely from
the assessment or assessments of the property of the land
owners within said district to be levied and collected in
accordance with the provisions of the said act of 1917; and
that the only vested and enforceable right which the holders
of claims for work done under such contracts would be the
right to require that assessments be seasonably levied and
collected by the Reclamation Board for the purpose of pro-
viding funds for the payment of the said claims; that as to
claimants for work done under contracts entered into after
the passage and approval of the several acts of 1919 the
vested rights of this latter class of claimants were bounded
and defined by the provisions of the act of 1917 as modi-
fied by the terms of these three latter enactments; that
as against the state of California itself the holders of
claims for work done at any of said times under contracts
with the Reclamation Board had no right to demand from
the state the payment of their claims nor the passage of
any law providing for such payment nor providing a
fund, for the reason that as between themselves and the
state there existed no contractual relation; that whatever
the state might do in the way of legislation providing funds
for the liquidation of such claims or for the repletion of
funds otherwise provided therefor or for the facilitation of
the means thus otherwise provided for the payment of said
or any claims against the Reclamation Board was a matter
of grace on the part of the state, and that it was entirely
within the power of the legislature in extending such grace
to couple the same with such limitations as it might deem

fit.  Second, that the three several acts of 1919, being passed and approved contemporaneously, are to be read together; that as to the first of these acts to be therein considered, viz., the so-called "Bond Act" (Stats. 1919, p. 1092), it was evidently adopted by the legislature in an endeavor to hasten the work of reclamation and flood control within said drainage district thus far carried forward under said previous enactments and which had been hampered and delayed by doubts and litigation affecting the validity of the assessment or assessments levied or to be levied for the payment of claims for work done and to be done pursuant to such enactments, by providing the method and machinery of a bond issue based upon the assessment which was already in the course of levy and collection but which had been subjected to such delays.  As to this change of method for the payment of said claims it was held in said prior decision that it was a matter entirely within the discretion of the Reclamation Board as to whether it would adopt or attempt to carry through a bond issue under the provisions of the said Bond Act and that the holders of claims or warrants for work done either prior to or after the adoption of said act have or claim any advantage in the matter of the payment of their said claims or warrants until such time as the experiment of a bond issue had eventuated in a successful sale of the bonds thus provided to be issued and in the deposit in the special fund designated in said prior enactments as the fund upon which warrants for their said claims had been or were to be drawn.  That as to the second of said acts of 1919 (Stats. 1919, p. 1122), it was an act purporting to amend section 34 of the prior Reclamation Board Act by the provision that as to all moneys which should thereafter be paid to the Reclamation Board of the state of California, either under previous acts making appropriation of money to be expended by or under the direction of said Reclamation Board in aid of carrying out the project adopted by said board and known as "Sutter Butte By-Pass Project No. 6," as well as all moneys paid to said Reclamation Board under any future modifications of or amendments to said acts, or under or by virtue of "any law of similar import which has been or may be hereafter adopted by the legislature," should be applied to the *pro rata* payment of such portions of said assessment as are

based upon flood control benefits as specified in said amended section. This act further provided that, ''The money so received by the reclamation board from the state shall, unless bonds based upon said assessment shall have been authorized by law, be by the reclamation board paid over forthwith to the state treasurer and be credited to the funds of said assessment to be used and expended in the same manner as funds collected from land owners upon said assessment. But if at the time of the receipt of any such money by the reclamation board from the state, bonds based upon said assessment shall have been authorized by law, the money so received from the state shall be deposited by the reclamation board with the state treasurer to be held as a special fund for the redemption of such bonds and shall, under the direction and as required by the reclamation board, be applied to the payment and cancellation of such bonds.'' The remainder of the section proceeds to give in detail the manner of such application. Third: It was held in said decision that the portions of said amendatory act of 1919 above quoted had in contemplation both the bond act passed contemporaneously therewith and the other of said three acts of that session of the legislature adopted of even date therewith. The third of said acts was the act providing for the appropriation of the sum of $3,000,000 from the state treasury (Stats. 1919, p. 1209), which has already herein been adverted to. It was held in said decision that while it was true that the moneys provided to be paid to the Reclamation Board in the ten annual payments were, when so paid, to be applied by said board in the manner provided for in the other two acts of the legislature adopted as of even date with the said act providing for such appropriation, it was also true that the legislature in the adoption of said latter act had reserved to itself the power to direct the application of the moneys to be derived from said appropriation to such purpose as ''is now or may hereafter be provided by law''; and that until the sums of money to be paid to the Reclamation Board as provided in said latter act had been actually applied to such purposes as were provided in said other two contemporaneous acts and had thus reached the special fund or funds set apart by the several previous acts of the legislature upon which warrants for the payment of claims for work done in the way of reclamation

and flood control had been or were to be drawn and from which such warrants when so drawn and registered were to be paid in the order of their registration, the legislature under the reservation retained by it under the above quoted sentence in said act had the power to change the direction of such appropriation; and, fourth, that the holders of claims or warrants against the Reclamation Board had no such vested right in or to the appropriation of the moneys already derived from such appropriation, in the absence of the accomplished devotion of such moneys then in the state treasury to the special purposes and funds provided for in said contemporaneous acts, to object to such diversion of said moneys then in the state treasury at the date of the passage of the act of the legislature approved June 2, 1923, providing for the application of some portion at least of said appropriation to the emergency purposes specified in said latter act.    In so deciding this court was called upon to deal only with the sums of money amounting in the aggregate to $610,000 which were actually in the state treasury at the time of the passage and approval of said act.    In the argument preceding that decision the main objections which were urged to the granting of the petition of the petitioners in that proceeding were presented on the part of certain warrant holders and also on the part of certain general creditors of the Drainage District who claimed that their resource for the ultimate payment of their claims was being impaired by the proposed diversion of the specific amount sought to be applied to other purposes than that of the payment of their claims, under the terms of said act.    The court in holding against the contentions of the warrant holders and general creditors of the said district in that regard based its ruling upon two grounds, first, upon the ground that the said respondents in that proceeding had no vested rights to the particular application of the amount of said appropriation sought to be diverted in that proceeding; second, that it had not thus far appeared that the proposed diversion of the particular portion of said appropriation affected by that proceeding would diminish the amount of money to be realized either from the collection of the assessment already levied or from the eventual sale of the bond issue theretofore authorized but as yet unsold, it then appearing to the court that the amount of outstanding registered warrants

was at that time considerably less than the amount which would be provided for the payment of the same either from the collection of said assessment or of the sale of said bonds, even though the said amount thus to be realized from the one or other of these sources were to be reduced by the application of the terms of the statute of 1923 to the portion of said appropriation sought to be diverted in that particular proceeding. It should also be stated that while the interests of certain land owners within said Drainage District were represented by counsel appearing *amicus curiae* in said former proceeding, no such serious or insistent objection to the granting of the petitioners' application was therein made as to seem to require particular consideration by the court in rendering said decision.

The foregoing review of the situation presented to the court at the time of the hearing and determination of said former proceeding and of the conclusions of the court arrived at therein brings us to the situation presented to the court by the issues as framed in the instant proceeding and by the arguments educed by the respective parties, whether appearing as the original parties thereto or as interested parties appearing as interveners or in the capacity of *amici curiae* during the course of said proceeding. The petitioners herein represent and show to the court that since the inception of the former proceeding affecting the first three payments of the annual installments provided for in the appropriation act of May 27, 1919, amounting in the aggregate to the sum of $610,000, and which said sum had already accumulated in the state treasury at the time of the passage and approval of the act of June 2, 1923, there was paid into the state treasury on account of such appropriation on July 1, 1923, the further sum of $300,000; that the emergency which called forth the enactment of the statute of June 2, 1923, still exists to the extent of requiring a further application of the moneys provided by the said appropriation act to construction work upon Sutter Butte By-Pass Project No. 6; that the bonds of said Drainage District authorized and issued pursuant to the terms and conditions of the bond act approved May 27, 1919, have not been sold; that on the nineteenth day of February, 1924, the Reclamation Board at a meeting of said board duly and regularly held adopted a certain resolution, pursuant to the terms of said act of

June 2, 1923, authorizing and directing the state treasurer to cancel the unsold bonds of said district to the extent and in the sum of $285,147.75 in addition to the amount of said bonds representing the sum of $610,000 in value theretofore canceled by the said state treasurer pursuant to the order of this court issued in said prior proceeding; and further authorizing and directing the said state treasurer to credit the said sum of $285,147.75 to the fund in the office of said state treasurer entitled ''Sacramento-San Joaquin Drainage District fund, Sutter-Butte by pass assessment No. 6, emergency fund,'' pursuant to the terms and conditions of said act; that said Reclamation Board did further and on said nineteenth day of February, 1924, submit the aforesaid resolution to the respondent herein, Ray L. Riley, as state controller, and did then and there demand of said Ray L. Riley as such state controller, that he direct and authorize said respondent Charles G. Johnson, as state treasurer, to credit the said sum of $285,147.75 to said emergency fund, pursuant to said statute of 1923, which acts the said state controller then and there refused and has ever since refused and neglected to do; that said Reclamation Board thereafter, and on said nineteenth day of February, 1924, submitted its aforesaid resolution to the respondent Johnson as state treasurer, and then and there demanded that he cancel the bonds referred to therein to the amount of $285,147.75 and that he credit the said sum to the said emergency fund; that said respondent Johnson, as such state treasurer, canceled said bonds to the said amount as directed by said Reclamation Board, but after so doing refused and still refuses to credit said sum to said emergency fund. Wherefore the petitioners pray for the issuance of a writ of mandate directed to said respondents commanding the doing by each of them respectively of the said acts as directed, authorized and demanded by said Reclamation Board. The original respondents herein have appeared and demurred to the petitioners' said application. They have also filed an answer and later an amended answer, in which they have undertaken to set forth certain matters by way of estoppel, and which will be considered in their appropriate order herein. Certain interveners have also appeared and been permitted to file their answers, objections and arguments in opposition to the issuance of the writ herein sought. These

interveners fall into two classes, first, of warrant holders representing registered claims against said Drainage District; second, land owners within said district. Under the first of these classes the American Bank of San Francisco has presented an answer on behalf of itself and other warrant holders of said district, which contains certain denials of the averments of the petition respecting the amount of the outstanding obligations of the said district and also certain averments as to the effect of the action sought to be compelled by the petition upon the rights and remedies of this class of creditors of the Drainage District. Reclamation District No. 1500, representing another class of warrant holders, has also intervened and filed an answer herein, wherein is set forth with much more of detail than the same matter is averred in the original petition the history of the action of the Reclamation Board in providing for and in making its levy of the assessment, including the amount thereof, upon the lands within said district for the purpose of entering upon and carrying forward the project of reclamation and flood control known as Sutter-Butte By-Pass Project No. 6, the history of the attempted bond issue in and of said project, the amount of outstanding registered and unpaid warrants at the date of filing of the petition herein. The said answer also sets forth with much of detail, either in substance or *in haec verba*, the several enactments of the legislature underlying the situation as presented in this proceeding, and draws certain legal conclusions therefrom which will be considered later herein. Representing itself and other land owners within said Drainage District the Sutter Basin Land Company has appeared as an intervener herein and has filed an answer to said petition, wherein is also set forth much of the matter embraced in said petition and in the other answers thereto relating to the present outstanding indebtedness of said Drainage District, and the substance and alleged effect of the several enactments of the legislature already before the court in the former and in this proceeding. There is also pleaded therein certain matters by way of defense and estoppel which will be adverted to later herein. Subsequent to the presentation of the several foregoing answers on behalf of the respondents and intervenors a stipulation was entered into between the petitioners, the respondents and the several

interveners with respect to the amount of the outstanding and unpaid warrants and of the interest due, payable and unpaid thereon at the date of the inception of this proceeding and also of the amount of money which has been paid out of the emergency fund to date, setting these several items forth with sufficient of detail to remove from the realm of dispute these matters and thus relieve the record of much of the subject matter which was otherwise put in issue by the several answers herein. The presentation of this stipulation clarifies the situation and leaves for the consideration of the court chiefly the varying views of the several parties hereto as to the proper interpretation to be placed upon the several acts of the legislature under the operation of which the rights and obligations of the several parties hereto have arisen. [1] Taking up the discussion of these matters at the point where it was left at the time of the decision of this court in the former case of *Sacramento & San Joaquin Drainage District etc.* v. *Johnson et al., supra,* the first question for our determination is as to whether the emergency which was asserted in its terms to have called into being the act of June 2, 1923, empowered the Reclamation Board to divert certain portions of the moneys to be paid over by the state treasurer to the said Reclamation Board for use in liquidating *pro tanto* the indebtedness of said district, by the method provided in said act, into the "Sacramento-San Joaquin Drainage District fund, Sutter-Butte By Pass Assessment No. 6 Emergency fund," and to use the moneys thus made available in further construction work, still continues. The act itself in section 2 thereof defines the nature and extent of such emergency in the following terms:

"Sec. 2. The legislature hereby declares that it deems it necessary for the immediate preservation of the public health and safety that this act shall go into immediate effect, by reason of the following facts, to wit: That unless sufficient levees included in project number six, but not yet built and to construct which funds are not available, are constructed without delay, the effect will be to overflow and greatly damage a large area of valuable land within the boundaries of project number six and damage levees already constructed, all of which will imperil the property and safety of the inhabitants within said boundaries and the land owners assessed by said assessment number six; that

the plans of the state for flood control contemplate the construction of said levees and said assessment number six has been levied for that purpose, but that due to certain unavoidable causes sufficient money is not now available from said assessment to complete said work so that certain land assessed under said assessment has become subject to a lien for said assessment but can not now enjoy any benefit therefrom unless said works are at once completed, and unless at once completed damage will result to the works already done and no funds are now available except as in this act provided to complete said levees without great delay. And it is hereby declared that this act constitutes an urgency measure which under the provisions of section one of article four of the constitution of the State of California shall go into immediate effect.''

In the answer and amended answer of the original respondents herein it is not disputed that the emergency which existed to the extent above set forth in said act at the date of the adoption thereof and also at the dates of the inception and decision of the said former proceeding still continues to exist. In the answers of certain of the interveners herein there are certain general denials as to the continued existence of said emergency, but in none of said answers is it attempted to be set forth or asserted that the facts recited in detail in the body of section 2 of said act as above set forth have ceased to exist or that such emergency has been removed by the doing of the construction work which has been done by said Reclamation Board with the aid of the amount of money made available to said board as the result of our former decision. It seems to us that the question as to whether or not the emergency conditions detailed in the foregoing provisions of said act persist was one for the determination of the Reclamation Board in view of the amplitude of the powers granted to said board in the several acts of the legislature providing for its creation and investing it with an almost unlimited jurisdiction in providing for the carrying forth of this vast project for the reclamation of the lands lying along the Sacramento River and its tributaries and of the control of the flood waters of these streams; and that, in the absence of the fullest averment and clearest showing that the facts creating the emergency for which the act was intended in some degree at

least to provide a remedy, have ceased to exist, the finding of the Reclamation Board implied in its demand upon the respondents herein for the further use of the moneys alleged to be available in the state treasury pursuant to the payment of further installments of said appropriation would be binding upon the parties hereto and upon this court.

The next matter to briefly engage our attention is that of the estoppel attempted to be set up in the amended answer of the original respondents herein and in varying language repeated in the answers of certain of the interveners herein. As to said original respondents they are simply state officials charged with the performance of such duties as the statutes creating their respective offices impose upon them. As to themselves the matters set forth in their amended answer could create no estoppel operating in their favor, but such estoppel could only arise, if at all, in relation to the parties really and beneficially interested in opposing the issuance of this writ; or, in other words, the warrant holders of the obligations of said Drainage District and the land owners of lands lying within the boundaries of the same. As to the warrant holders it will be sufficient to state, first, that under the decision of this court in the former proceeding it was held that the several classes of warrant holders or of general creditors of the said Drainage District had no vested right to demand, receive or control the disposition of the $3,000,000 appropriation by the State of California provided for in the act of the legislature of May 27, 1919, making such appropriation, at least until the same or some of the installments thereof had been deposited in the special fund in the state treasury out of which their respective claims were made payable by the terms of the statute authorizing their creation and registration; second, that there is no fact pleaded either in the answer of the original respondents or of the answers of said several classes of warrant holders appearing herein which would suffice to constitute an estoppel in their favor in any event. Take, for example, the following averment in the answer of said respondents: "That such contractors and other persons who performed work upon and who supplied materials for the construction of the works aforesaid relied upon the legislative dedication of the said sum of $3,000,000 to the payment of their respective claims and demands and of the

warrants issued in evidence thereof in the manner provided in sections 15, 32 and 34 of the Reclamation Board act and were at all times encouraged to so believe and indeed to so rely by the Reclamation Board as it was then constituted and by the individual members and officers thereof.'' [2] It should go without saying that the only reliance which persons who performed work for the state or any subordinate statutory agency thereof can have is upon the language and proper interpretation of the statute under which their work is performed and the obligation in their favor arises, and that they can acquire no rights by way of estoppel, either from their own mistaken interpretation of such statute or statutes or from the acts or statements of those officials or agencies of the state who are engaged in the exercise of its delegated police power, and whose power to bind the state is defined by the acts under which they function. We find no facts alleged either in the answer of the original respondents or in the answers of the interveners who appear in the capacity of warrant holders herein which would suffice to take the case outside of the foregoing rule, or to entitle the parties hereto to claim that the petitioner herein is estopped to ask for the particular application of any portion of a fund in the destination of which they have, as we have heretofore seen, no vested interest or right of control. As to the rights and interests of the land owners in respect to the use of the money derived and to be derived from the said $3,000,000 appropriation or any portion thereof in the manner provided by the terms of the act of June 2, 1923, a somewhat different question is presented, but we do not think that question arises by way of estoppel; for, as to the land owners also, their rights and interests in the premises are regulated by the statute and not by any mistaken interpretation of it by themselves or by any or all of the members of the Reclamation Board. The fact is that the land owners whose lands lie within said Drainage District are and have always been the persons of all others most vitally interested in the inception, the progress and the completion of the work of reclamation and flood control therein, and they constitute the class of persons upon whom the chief burden of the expense of such work must ultimately fall. Whatever of financial aid might be extended by either the federal or state government, or both, should,

if possible, be made to so operate as to embrace the two objects of advancing the progress and completion of said work and of lightening the land owners' burden. The several enactments of the state legislature which were reviewed by us in the former proceeding and are applicable to this one, undertake to provide a method by which both of these purposes shall be promoted in the application of the money derivable from the state of California through the operation of the provisions of these several statutes relating to the levy and collection of an assessment or assessments upon the property of the landholders of the district and also of the appropriation act of May 27, 1919. By the act of 1911 (Stats. 1911, Ex. Sess., p. 117) the Reclamation Board was created for the purpose of projecting and carrying to completion the work of reclamation and flood control along the line of the Sacramento River and its tributaries conformably to the report of the California Debris Commission which was expressly approved in said act. By the act of 1913 (Stats. 1913, p. 152), the former enactment was amended and supplemented, greatly enlarging the powers of the Reclamation Board and creating and defining the boundaries of the Sacramento and San Joaquin Drainage District. By the terms of said act the Reclamation Board was empowered to proceed by purchase, condemnation, or other lawful means to acquire all lands, rights of way, and other property and material necessary or requisite for achieving the purposes of said act and to make all contracts and do all things necessary to the accomplishment of such purposes; and in order to the exercise of these powers and the achievement of these purposes the Reclamation Board was by section 13 of said act directed to levy and collect an assessment upon the lands within said Drainage District. The work of reclamation and of flood control began and proceeded under said act, and the act of 1915 (Stats. 1915, p. 1338) still further amplifying the same, and in its preliminary stages and prior to the adoption of any particular plan of assessment by the Reclamation Board was paid for by special appropriation by successive legislatures up to and including the year 1917. In November of the latter year, however, the reclamation had so far proceeded with the preliminary work of determining the plan or project for carrying forward the said work of reclamation and flood

control within that certain portion of said Drainage District designated as Sutter-Butte By-Pass Project No. 6 and of estimating the amount which would probably be required for such work as to proceed with the matter of the levy and collection of an assessment upon the property of the land owners within such designated portion of said district for an amount sufficient to pay the estimated cost thereof which, after several amendments and consequent delays, was finally fixed at the sum of $8,155,798.70. These delays and the litigation which arose over the validity of the plan of assessment adopted by said board carried the matter along into the year 1919, when the state legislature, in an evident attempt to relieve the situation, adopted the three contemporaneous enactments which were fully reviewed in our former decision. The particular portion of said enactments required to be recalled and reconsidered in this proceeding relates to the rights of the land owners in the particular portion of such general Drainage District as are affected by said assessment and of the application of the provisions of said enactments to such portions thereof as remain unpaid. By the terms of that one of said enactments which has been designated as the Bond Act, a method for the issuance and sale of bonds was provided, the first step in relation to which was to be that of the validation of said assessment by certain specified judicial proceedings which, when the same had been accomplished and had ripened into a judgment, should constitute a lien upon the lands within said area affected respectively by such assessment. If at the expiration of thirty days after the imposition of such lien the landholder whose lands were affected thereby should pay his portion of such assessment the lien of such assessment upon his lands should cease; but if at the expiration of said period any portion of said assessment should remain unpaid the Reclamation Board was then required to call an election for the purpose of determining by the vote of the landholders whether there should be a bond issue, and if the vote of a majority of the voters cast thereat was favorable to such bond issue the said board was compelled to provide for the issue of such bonds in an amount required to pay the unpaid calls upon said assessment, which bonds when so issued were to be placed in the hands of the state treasurer for sale for a sum not less than ninety-five per cent of the

face value of said bonds and the accrued interest thereon, the money derived from such sale to be by the state treasurer placed to the credit of the portion of said district affected by said assessment and in a fund to be known as the construction fund and was then to be drawn upon and expended for the payment of warrants drawn by the state controller at the request of the Reclamation Board in payment of the work and other expenditures for which such assessment had been provided. The act then proceeded to provide for the collection of said assessment and to the payment of the moneys from time to time derived therefrom to the state treasurer to be placed by him to the credit of the bond fund and be devoted to the payment of said bonds when due. The Bond Act further provides that if within one year from the time when such bonds had been authorized to be issued they should not have been sold or disposed of the Reclamation Board might in its discretion cancel all proceedings relative to such bond issue and call for the payment of said assessment in such installments as it should then determine in accordance with the provisions of the Reclamation Board Act. It may be well at this point and before proceeding to a review of the other of said enactments germane to the instant discussion to observe that the bonds of said district which were issued under the foregoing provisions of the said Bond Act have not been sold but still remain to the credit of said district in the state treasury. Whether such bonds could at any time subsequent to their said issue and prior to the inception of this proceeding have been sold for a sum not less than ninety-five per cent of their face value with accrued interest nowhere appears in either the pleadings or arguments presented in this case, and we are, therefore, entitled to assume that such bonds are not as yet salable upon the above terms.

The next of said enactments of 1919 to be briefly considered is that providing for an appropriation of the sum of $3,000,000 for the purpose as declared in section 1 of said act of co-operation in the construction of public works "within Sutter-Butte By-Pass Project No. 6." This act provides that the money thus appropriated is to be paid to said Reclamation Board "for the benefit of said Sacramento and San Joaquin Drainage District in connection with said Sutter-Butte By-Pass Project No. 6 or any modifications

or amendments thereof as may hereafter be made in accordance with law, the same *to be applied as it is now or may hereafter be provided by law."* In construing this portion of said act in our former decision we held that by this latter provision therein the legislature in exercising its right of grace in the making of said appropriation retained the right to make such application of its proceeds as might from time to time thereafter be provided by law, and that in so far at least as the warrant holders of claims against said portion of said Drainage District were concerned they had no such vested right in such appropriation as would entitle them to object to such application thereof as the legislature might then or thereafter see fit to make, so long at least as the moneys to be from time to time derived from such appropriation had not reached the point of deposit in the special fund upon which the warrants of such claimants had been drawn. While at the time of such prior proceeding it did not appear that the outstanding claims of creditors of said district as represented in registered warrants exceeded or was even perilously near the amount of the assessment then in course of levy and collection and which constituted the only then existing resource for the payment of their said claims, and that for that reason, in addition to the other and stronger reason then given they were not entitled to any relief in said proceeding, it does now appear from the stipulation of the parties hereto that the amount of outstanding and unpaid warrants drawn against and payable by said portion of said district does practically equal, if not exceed, the amount estimated in said assessment as probably sufficient for the execution of the project in the course of which these claims arose. We are still of the opinion that the said warrant holders have under the terms of the statutes under consideration herein no vested right to question the validity of the act of the legislature of June 2, 1923, providing for a different distribution of the moneys derived from said appropriation for the main reasons set forth in our former opinion. In the case of the landholders a somewhat different question is presented by the peculiar wording of the several sections of the statutes under review. [3] While the plan adopted for carrying By-Pass Project No. 6 to its completion contemplated that the land owners should bear the larger part of the cost of so doing

and that the money needed for the conduct and completion of such work should be raised by the levy of an assessment or series of assessments upon their respective properties within said district, and while the imposition of this burden also carried with it the right in these land owners to have the moneys paid in by them in the course of such assessment applied to the payment of the claims of contractors and others arising in the course of such constructive work, the several statutes relating to the levy and collection of such assessments did not and could not contemplate that the moneys so to be collected should be applied only to the payment of claims for past construction since it was therein provided that it was only when such sums had been actually collected and paid into the proper fund that registered warrants drawn upon such fund were to be paid in the order of their registration. Necessarily this was to be so for the work of construction was still going on while the assessment was still in large part uncollected. If it were necessary to make it more clear that the Reclamation Board had the power to use whatever money came into its hands for future as well as past constructive work the Bond Act which was approved by the landholders at an election called for that purpose did so, since it expressly provided that the bonds issued in accordance with said act might be used directly to pay for future constructive work. It would thus seem clear that the land owners had no vested right to require that the proceeds of the assessment should, either when collected directly or when provided for in advance of collection by the bond issue, be exclusively applied to the payment of warrants for past work until at least such moneys derived from such assessment or from the sale of bonds had reached the special fund upon which registered warrants had been drawn. But even were it otherwise it would seem plain that whatever rights the landholders might have had in the premises these were fully protected by the terms of the act of June 2, 1923. It is provided in that act (Stats. 1923, p. 640) that all moneys which may be hereafter paid to the Reclamation Board by the state of California under the act of 1911 and the various amendments thereto of which the appropriation act of May 27, 1919, was one, "shall be applied on said Sutter-Butte By-Pass Assessment No. 6 by said Reclamation Board to the *pro rata* payment of

such portions of said assessment as are based upon flood control benefits as set opposite each assessment in the manner hereinbefore provided.'' It is further provided therein that ''The money so received by the Reclamation Board from the state shall, unless bonds based upon said assessment shall have been authorized by law, be by the Reclamation Board paid over forthwith to the state treasurer and by him credited to the funds of said assessment to be used and expended in the same manner as funds collected from land owners upon said assessment. But if at the time of the receipt of any such money by the Reclamation Board from the state, bonds based upon said assessment shall have been authorized by law, the money so received from the state shall be deposited by the Reclamation Board with the state treasurer to be held as a special fund for the redemption of such bonds and shall, under the direction and as required by the Reclamation Board, be applied to the payment and cancellation of such bonds in the manner following, to wit'': The act then goes on to provide a method for calling such bonds as are sold and outstanding in order to make the foregoing application. The act then proceeds: ''If, however, bonds based upon said assessment shall have been authorized by law but said bonds or any of them shall not have been sold, upon the receipt of any sum of money under said act or acts of similar import and thereafter and prior to the sale of said bonds or any of them, the Reclamation Board may order the cancellation of such number of said bonds so authorized but not sold as will at par equal the amount of money then on deposit in the state treasury which may legally be used for the purpose of canceling such unsold bonds as hereinbefore provided.'' The act then makes the following provision for the benefit of the land owners who are subject to said assessment and who would have been subject to the burden of these bonds had the same been sold, viz.: ''The land owners shall be credited with an amount equal to the amount of bonds so canceled, said sum to be applied on the Sutter-Butte by-pass assessment No. 6 in the *pro rata* payment of such portions of said assessment as are based upon flood control benefit set opposite any tract of land in the same manner and to the same extent as hereinbefore provided, so that the total amount credited on said assessment for flood control benefit shall equal the money

on deposit in the state treasury." Having in mind the situation as presented to us in the former case and as presented to us in the instant case, it is difficult to perceive how the interests of the land owners could in any manner or to any extent be injuriously affected by the application of the moneys involved in said former proceeding or involved in this proceeding in the manner provided for by the foregoing provisions of the act of June 2, 1923. If the bonds provided for in the bonding act or any considerable number of them had been sold the money received from such sale would have been applied *pro rata* to the reduction of the land owners' assessment. If the bonds had not been sold the moneys received from the state from the appropriation were to be applied to the retirement *pro tanto* of these unsold bonds and in the same manner precisely credited upon the assessments respectively of the land owners, and the bonds so retired would be canceled. Thus far in applying the foregoing provisions of said act it would seem clear that the land owners could not be injuriously affected by its terms.

[4] We are thus brought finally to an interpretation of the remaining portions of the act of June 2, 1923, relating to the further use by the Reclamation Board of installments of said $3,000,000 appropriation provided for in the appropriation act of 1919 and already drawn upon to the extent of $610,000 by the Reclamation Board in pursuance of the writ of mandate issued under our former decision. The correctness of that decision is not attempted to be impeached by the respondents in this proceeding, but it is contended that the scope of the act cannot be extended so as to include the diversion of any further installments of said appropriation into the state treasury subsequent to the passage and approval of the act. The portion of the act which we are asked to thus construe continues on from the passage of said act last above quoted and reads as follows:

"The money on deposit in the state treasury at the time these bonds are so canceled, shall thereupon be credited to a fund entitled 'Sacramento-San Joaquin drainage district fund, Sutter-Butte by-pass assessment No. 6, emergency fund' which fund is hereby created and shall be paid out on warrants of the controller on said fund upon order of the reclamation board, and the controller is hereby directed to issue

warrants upon said fund whenever drafts of the reclamation board on said fund shall be presented to him, and the state treasurer is hereby directed to pay such controller's warrants when there is sufficient money in said fund. The intent of this act is to make said funds available for the immediate use of the reclamation board in contracting for the completion of Sutter-Butte by-pass project No. six, and the reclamation board shall contract on a cash basis for additional work included in said project and assessment, but not yet done, and the pay for which funds are not available, and shall meet the payment on said contract or contracts out of said emergency fund hereby created to the extent thereof and the reclamation board shall provide in the manner now or hereafter prescribed by law therefor any further funds required to complete said work and to pay and discharge the outstanding obligations of said project.''

We are unable to give the narrow interpretation to the above portion of said act required by the respondents' contention in view of the statutory enactments preceding its adoption, as reviewed in our former decisions in *Sacramento & San Joaquin Drainage District etc.* v. *Johnson, supra,* and in *Matter of Proceeding to Validate Sutter-Butte By-Pass Assessment No. 6, etc.,* 191 Cal. 650 [218 Pac. 27], which in a large measure disclose the conditions which attended its formulation, and also in view of its recitals, and especially of those set forth in the concluding portions of said act. It is a conceded fact appearing from these sources that the assessment which had been provided for in the acts of 1913 to 1917 remained unlevied up to the latter part of the year 1917, and, with the exception of an inconsiderable sum had remained unpaid, due to the litigation over its validity, until the date of the act of June 2, 1923, and even until after that act had become a law (*Matter of Proceedings to Validate Sutter-Butte By-Pass Assessment, supra*). It is also a conceded fact that during these intervening years constructive work had been carried forward within said district to an extent which put the project of reclamation and flood control therein into an advanced but as yet uncompleted stage at a cost represented in outstanding and unpaid claims of contract creditors and warrant holders of sums approximating in the aggregate the amount of the said assessment; that the relief attempted to be afforded

by the bond issue for the distressful condition which the foregoing facts had created had, from causes beyond the forethought of the legislature which passed the act of 1919 providing for it, proved unavailing; that the said bonds had not and could not be sold at the price below which they could not legally be offered for sale; that the $3,000,000 appropriation also provided by the legislature of 1919 as a partial relief for the situation was not available owing to the fact that said bonds had been issued but had remained unsold; that out of these complexities arose the emergency with which the legislature of 1923 found By-Pass Project No. 6 to be confronted and which are set forth in the terms of its said act of June 2, 1923. One of these emergencies, and the one stressed in the concluding section of said act, was the following:

"That unless sufficient levees included in project number six, but not yet built and to construct which funds are not available, are constructed without delay, the effect will be to overflow and greatly damage a large area of valuable land within the boundaries of project number six and damage levees already constructed, all of which will imperil the property and safety of the inhabitants within said boundaries and the land owners assessed by said assessment number six; that the plans of the state for flood control contemplate the construction of said levees and said assessment number six has been levied for that purpose, but that due to certain unavoidable causes sufficient money is not now available from said assessment to complete said work so that certain land assessed under said assessment has become subject to a lien for said assessment but can not now enjoy any benefit therefrom unless said works are at once completed, and unless at once completed damage will result to the works already done and no funds are now available except as in this act provided to complete said levees without great delay."

In the presence of the foregoing emergencies the act of 1923 was adopted. In our former decision upholding said act it was given application to the sum of $610,000 then in the state treasury as an accretion of the installments payable annually upon the aforesaid state appropriation. We are now asked to give said act application to the additional installment of $300,000 paid into the state treasury on ac-

count of said appropriation. It seems sufficiently plain to us that all of the conditions constituting the emergencies which in the judgment of the legislature called for the adoption of said act still persist. The assessment has not in the main been collected. The bonds have not been sold and, so far as has been shown to us, are yet unsalable. The work of reclamation and flood control which has during the past year been somewhat advanced by the application to further constructive work thereon of the said sum of $610,000 authorized to be thus applied by our former decision still remains in an unfinished state, and in so far as herein appears still presents the menace of determination referred to in the emergency recitals of said act. So long as said assessment is unpaid and so long as said bonds remain unsalable and unsold, and so long as the aforesaid emergency requiring forward constructive work continues, it would seem that recourse to the recurring installments of said appropriation ought, in the absence of an express statutory inhibition, to be had in the interests of all concerned. It would have been easy for the legislature of 1923, had it intended to limit its permission to the Reclamation Board to have access to sums paid or payable upon said appropriation to the specific sum of $610,000 in the state treasury at the date of the passage and approval of said act, to have expressly signified its intention so to do. The act contains no such limitation. It provides with direct reference to the moneys provided for the said appropriation that, "If, however, bonds based upon said assessment shall have been authorized, but said bonds or any of them, shall not have been sold, upon the receipt of any sum of money under said act or acts of similar import, and thereafter and prior to the sale of said bonds, or any of them, the Reclamation Board may order the cancellation of such number of said bonds so authorized, but not sold, as will, at par, equal the amount of money then on deposit in the state treasury, which may legally be used for the purpose of canceling such unsold bonds as hereinbefore provided and the total of the bonds to be issued shall be reduced by such amount of the money on deposit in the state treasury, and no bonds shall be sold to an amount in excess of the amount originally authorized, as reduced by the bonds so canceled at par." The foregoing language of said act is broad enough in its terms to

include a period of time extended until the bonds based upon said assessment shall have been sold and to embrace not only the moneys derived and derivable from said appropriation act, but also any sum or sums of money derivable from any acts of similar import, so long as the emergency defined in said act continues. Thus far in this litigation the good faith of the Reclamation Board in the prosecution of said constructive work, in the levy and collection of said assessment, in the issue and attempted sale of said bonds and in the use of the funds, access to which is provided for in the act of 1923, has not been brought into question. If said Reclamation Board has been remiss in the matter of the levy and collection of said assessment, or in the matter of the issuance and sale of said bonds, or in the matter of the expenditure of any sums available to it for past or future constructive work, ample remedies for such remissness or breach of duty are provided by law; but in the absence of any such showing or of recourse to such remedies it would not seem to be in accord with sound public policy to so narrowly construe the act of 1923 as to hamper said board in its effort to meet and adequately deal with the emergencies of the situation as expressed in said act and as evidently still existing. As to the reasoning of the respondents and interveners based upon their expressed fears that the interpretation of the act of 1923, for which the petitioners contend, would result in empowering the Reclamation Board to entirely exhaust said appropriation by repeated drafts upon its annual installments as they are paid into the state treasury, we would merely suggest that it would seem that a very simple and direct method open to the respondents and interveners herein to prevent any future diversions of the recurring installments of said appropriation would be that of insisting upon the sale of said bonds, if and when they are in fact salable under the limitations of the act providing for their issuance, since upon the sale of said bonds the powers of the Reclamation Board to make further drafts upon said appropriation would immediately cease.

Let the writ issue as prayed for.

Lennon, J., Waste, J., Seawell, J., Lawlor, J., and Shenk, J., concurred.

Rehearing denied.