[Civ. No. 8252. Third Dist. Nov. 25, 1953.]

RECLAMATION DISTRICT NO. 1500, Plaintiff and Respondent, v. SUTTER BASIN CORPORATION, LTD. (a Corporation), Appellant; THE PEOPLE, Intervener and Respondent.

Rich, Carlin & Fuidge for Appellant.

Downey, Brand, Seymour & Rohwer for Plaintiff and Respondent.

Edmund G. Brown, Attorney General, Walter S. Rountree and Raymond H. Williamson, Deputy Attorneys General, for Intervener and Respondent.

VAN DYKE, P. J.—This is an appeal by Sutter Basin Corporation, Ltd., a corporation, from a judgment rendered against it, whereby it was enjoined from using the east levee of respondent Reclamation District No. 1500, which levee is a part of the west levee of the Sutter By-pass, for vehicular traffic and for the grazing of livestock.

After the commencement of the action intervention was permitted by the People of the State of California and the Sacramento and San Joaquin Drainage District, acting by and through the State Reclamation Board.

The cause was tried and briefed to the trial court, which thereupon rendered a written opinion which so clearly, adequately and fully discusses the legal and factual issues presented by the pleadings and the evidence, and the decision of the court with respect thereto, that we will adopt the parts of that opinion hereinafter quoted as the opinion of this court on appeal. That portion of the trial court's opinion so adopted reads as follows:

"This is an action brought by the above-named reclamation district seeking perpetually to enjoin defendant from pasturing stock, particularly sheep, upon plaintiff's levee, and from using said levee for vehicular travel. . . .

"Defendant resists the action on the principal ground that as owner of the land upon which the levee in question was constructed, it had specifically reserved a right of way upon said levee for road purposes, and also for pasturage, and that it had exercised said rights without question for some thirty years.

"Following the filing of the complaint, and on permission of the court first had and obtained, a complaint in intervention was filed in the name of the People of the State of California, the Sacramento and San Joaquin Drainage District, acting by and through the Reclamation Board of the State of Cali-

fornia. The interest of the intervener is predicated upon the fact that the levee in question serves a dual purpose, namely, as the east levee of plaintiff reclamation district, and at the same time, the west levee of the Sutter By-pass, which in turn is located within the boundaries of, and comprises a portion of the Sacramento and San Joaquin Drainage District, and further is a part of the Sacramento River Flood Control Project, as approved by the United States and the State of California; that the intervener is charged by the Sacramento River Flood Control Project and by law to operate, protect and maintain said west levee of the Sutter By-pass, together with all rights, easements and appurtenances thereto.

"At the outset, and because plaintiffs in intervention have been admitted as parties to the case, it is apparent that the problems here involved cannot be narrowed to a controversy between plaintiff reclamation district and defendant company, but that they are inextricably woven into the whole history of a vast flood control project of the Sacramento River, and involve the rights and interests of the people of this state, and through contract and by law, the federal government itself.

"No attempt will be made unnecessarily to narrate that history here. It is plainly written in the acts of the Legislature of this state, of Congress, and in the several decisions of our Supreme and appellate courts, as they were called upon to adjudicate legal questions presented in the growth and development of the project.

"(See *Sacramento & San Joaquin Drainage Dist.*, v. *Superior Court*, 196 Cal. 414, 417 [238 P. 687]; *Reclamation Board* v. *Riley*, 208 Cal. 661 [284 P. 668]; *Argyle Dredging Co.* v. *Chambers*, 40 Cal.App. 332 [181 P. 84]; *Reclamation Board* v. *Chambers*, 46 Cal.App. 476 [189 P. 479]; *In re Sutter-Butte By-Pass Assess. No. 6*, 191 Cal. 650 [218 P. 27]; *Sacramento & San Joaquin Drainage Dist.* v. *Johnson*, 192 Cal. 211 [219 P. 442]; *Sacramento & San Joaquin Drainage Dist.* v. *Riley*, 194 Cal. 624 [229 P. 957]; *Sacramento & San Joaquin Drainage Dist.* v. *Riley*, 199 Cal. 668 [251 P. 207].)

"The public interest in the entire project, however, is well described in the case of *Sacramento, etc., Drainage Dist.* v. *Riley*, 199 Cal. 668, where our Supreme Court, in considering a problem relative to the appropriation of $300,000.00 by the State Legislature in connection with 'Sutter-Butte By-Pass Project No. 6,' said on page 685 as follows:

" 'The work of reclamation and flood control in that important and extensive region which is embraced within the boundaries of the Sacramento and San Joaquin Drainage District is and from its earliest inception has been considered to be essentially a public project undertaken by the State of California in its interest and in the interest of its people at large. It was so regarded by the state in its action approving the report of the California Debris Commission in the year 1911 and by the act of its Legislature of that year. (Stats. 1911, Ex. Sess., p. 117.) It was expressly declared to be, such by the enactment of the Legislature of the following year amending said former act (Stats. 1913, § 7, pp. 252-266), wherein it was stated that, "The State of California and the people thereof are hereby declared to have a primary and supreme interest in having erected, maintained and protected on the banks of the Sacramento and San Joaquin rivers and their tributaries and the by-passes and overflow channels mentioned herein, good and sufficient levees and embankments or other works of reclamation, adequately protecting the lands overflowed by said streams, and confining the waters of said rivers, tributaries, by-passes and overflow channels within their respective channels, and it shall be the duty of the Reclamation Board at all times to enforce on behalf of the State of California and the people thereof the erection, maintenance and protection of such levees, embankments and channel rectification as will, in their judgment, best serve the interests of the State of California." '

"The particular facts out of which the present litigation arises may be summarized as follows:

"In the year 1919 Sutter Basin Company, a corporation, granted to Reclamation District Number 1500 a perpetual easement and right of way over its lands for the construction, maintenance, operation and repair of levees and other works of reclamation. In said grant certain rights were reserved by Sutter Basin Company, it being stipulated therein that all such rights and privileges so reserved should be subject to the jurisdiction, use and enjoyment of the said Reclamation District, for reclamation purposes. It was further stipulated therein that Sutter Basin Company reserved the right to use said levee or right of way or land for any other purpose not inconsistent with the use of the same for reclamation purposes.

"Thereafter, Reclamation District Number 1500 completed the construction of the levee here involved and dedicated it

to the use for which it was constructed, namely, of reclaiming swamp lands of that portion of the Sacramento River valley.

"By instrument dated May 29, 1926, Reclamation District Number 1500 granted to Sacramento and San Joaquin Drainage District, a public agency or mandatary, a perpetual easement 'to use, operate, repair and enlarge those certain levees and other works of reclamation . . .,' being the levee in this litigation involved. The consideration for said grant, as expressed therein, was the issuance through Reclamation District Number 1500 'of warrants aggregating $3,702,980.99 drawn against Sutter-Butte By-Pass Assessment Number 6 for the Sacramento and San Joaquin Drainage District, receipt of which is hereby acknowledged.'

"In said grant of easement it was further provided: 'It is the intention hereof to grant to said party of the second part a perpetual easement in and to said property hereinafter described for all purposes consistent with the flood control project of the State of California, or any changes, additions or modifications that may hereafter be made therein . . .'

"As a part of the same transaction, Sutter Basin Company executed a quitclaim deed under date of June 30, 1926, to the Sacramento and San Joaquin Drainage District, . . ., whereby it did remise, release and forever quitclaim all its rights, title and interest in and to a perpetual easement to use, operate, repair and enlarge its certain levees and other works of reclamation or flood control. Said quitclaim deed further provided:

"'It is the intention hereof to quitclaim to said party of the second part a perpetual easement in and to said property hereinafter described, for all purposes consistent with the flood control project of the State of California, or any changes, additions or modifications that may hereafter be made therein, and also the perpetual right to take and use materials, as well as all other right incident to such flood control project, or any changes, additions or modifications thereof, over, upon and across said property hereinafter described. There is hereby expressly reserved by the party of the first part in the property hereinabove mentioned, including the levees and embankments thereon, a right of way and easement for all highway and road purposes for which a road or right of way may sufficiently or lawfully be used, and also a right of pasturage for any and all animals and for all pasturage purposes.

"'The party of the first part does also reserve, in addition

to said reservations specially mentioned, in all the said property, all other uses and the right to use the said property for any purposes *not inconsistent with the flood control plans of the State of California, now or hereafter adopted, it being understood and provided, however, that the exercise of said right of way and easement for highway and road purposes, and said right to right of pasturage shall at all times be subject to and consistent with the flood control plans of the State* of California now or hereafter adopted.' (Emphasis added.)

"Implementing said grant of easement, a second quitclaim deed was executed under date of June 30, 1926, by Sutter Basin 'Improvement Company, predecessor of defendant Sutter Basin Company, to Sacramento and San Joaquin Drainage District, . . ., said deed containing like provisions to that of the quitclaim deed hereinabove quoted.

"Inasmuch as defendant's claim of right to use the levee in question for pasturage and for vehicular travel is derived principally from the reservations expressed in these instruments, it is necessary that said provisions be examined with care. In this connection, it must be noted, first, that the grant in said deeds contained specifically contemplated that the said levee of Reclamation District Number 1500 would thenceforth become part and parcel of a larger project, and that instead of serving solely as a levee for the purpose of reclaiming and making tillable swamp lands within the boundaries of the District, it became the westerly levee of a project which had for its primary purpose the control of floods in a vast area. The language used in the two quitclaim deeds, therefore, was apparently selected with some precision. First, it must be noted that the grant of the perpetual easement specifically included 'all purposes *consistent* with the flood control project of the State of California, or *any changes additions, or modifications that* may hereafter be made therein.' Then the reservations of rights and uses to the grantors were limited to 'any purpose *not inconsistent* with the flood control plans of the State of California *now or hereafter adopted.'* And, finally, 'that the exercise of said right of way and easement for highway and road purposes, and said right to right of pasturage shall at all times *be subject to and consistent with the flood control plan of the State of California now or hereafter adopted.'* (Emphasis added.)

"It is patent from the plain and specific language used in said deeds that the rights reserved by the defendant here

were not intended to be absolute or static, but at all times subordinate and correlative to the flood control project and to its future development.

"Having thus by its own instrument in writing made the reservation of its rights correlative to the flood control project and subordinate thereto, the question then arises as to whether or not the present exercise by defendant of the right of pasturage. and of vehicular travel on said levee is inconsistent with the said flood control plans of the State of California as presently adopted.

"Without attempting to relate the history of the flood control project, it can be said in general that the State of California in the development of this vast project, enlisted aid from the federal government, and in doing so entered into contractual relations with the federal government which was confirmed by Public Laws enacted both by Congress and by legislation passed by the California State Legislature. The magnitude of the entire project can also be appreciated by a consideration of its cost. According to Colonel A. M. Barton, Chief Engineer and General Manager of the Reclamation Board of the State of California, the total cost of the project has been $117,670,000, in which the State of California's share has been $40,175,000, and that of the federal government, $40,695,000. Also, on this particular levee here involved, as a part of the Sacramento River Flood Control Project, there was expended as recently as 1942 the sum of $1,300,000, appropriated by the United States, and spent in bringing the levee up to standard grade and cross-section by the War Department engineers. It has already been noted that the Sacramento and San Joaquin Drainage District, in consideration of the transfer of said levee, agreed to issue its warrants in the sum of $3,702,980.99, so that the financial interest of both the state and federal governments in the project can be readily seen.

"The evidence showed that the flood control plans of this state were modified and that by said modification the State of California agreed with the federal government, in consideration of the appropriation by said federal government of said large sums of money, that the State of California would maintain all of the project works in the Sacramento River Flood Control Project in accordance with the regulations of the United States Army engineers. This agreement, by enactment of both federal and state statutes, has acquired the force of law, and the State of California is now

bound and obligated by law to maintain the levee here in question in accordance with the regulations of the said Army engineers.

"In view of this modification of said flood control plans, the ultimate question for decision here is whether or not defendant's reserved rights of the use of said levee are now inconsistent with said modifications, and specifically whether said uses are in conflict with the regulations for maintenance promulgated by said United States Army engineers. These regulations provide:

" '4.02 Pertinent Requirements of Section 208.10, Title 33, of Code of Federal Regulations.

" 'a. Levees.

" '1. Maintenance. The Superintendent shall provide at all times such maintenance as may be required to insure serviceability of the structures in time of flood. . . . Periodic inspections shall be made by the Superintendent to insure that the above maintenance measures are being effectively carried out and further, to be certain that:

" ' (XI) There is no unauthorized grazing or vehicular traffic on the levees.'

"Defendant contends that the rights reserved by it under its said grant deeds cannot be restricted by any regulations of the Army engineers, and asserts its right to use the levee for the grazing of sheep and for vehicular travel in connection therewith without authority from anyone. It specifically disputes the authority of officials, either local, state or federal, to interfere with said grazing and vehicular travel, and in particular to debar defendant from using the roadway on the crown of the levee for the moving of sheep and trucks.

"The evidence showed that a conflict occurred in the exercise of the rights claimed by defendant, and of those sought to be asserted by plaintiff and plaintiffs in intervention during the rainy season of the year 1950. This was a year of exceptionally heavy rainfall in the autumn and winter months, and one which brought both a threat of and actual floods themselves in the region here involved. The evidence further showed that the crown of the levee in question was in places rutted and cut up by vehicular travel to [such] an extent as to make it practically impassable for equipment, and particularly for the proper patrol of the levee, or in case of emergency, for moving men and materials to protect the levee. Nevertheless, defendant disputed the right of reclamation district officials, local, state or federal, to debar

defendant from the use of the levee for grazing of sheep and for the moving of equipment in connection therewith. As pointed out above, the defendant then, and at the trial of the action, contested any regulation of the Army engineers which would prevent defendant's use of said levee.

█ ''From the foregoing, the Court cannot help but conclude that the said assertion of rights by defendant to pasture said levee and to use the same for vehicular travel in a manner contrary to and in conflict with the regulations of the Army engineers, constitutes a purpose now inconsistent with the flood control plans of the State of California, as they existed at the time of filing this action. █ The Court does not believe that such a conclusion has the effect of depriving defendant of any property without due process of law or without paying just compensation therefor. To the contrary, it considers such a conclusion to be a direct and proximate result of defendant's own contract, namely the quitclaim deeds of June 30, 1926.''

We think the reasoning by which the trial court arrived at its stated conclusions with respect to the nature of the reservations contained in the pertinent title deeds and the effect of the changes in the over-all flood control plan are sound. The interrelationships of the state agencies and the federal government are so many and so mutually interdependent as to make the several undertakings of the public agencies part and parcel of that plan and specifically this reasonably includes the rules and regulations for maintenance and care of the subject levee as a part of the whole integrated levee system. It follows, therefore, that the rules and regulations of the Army engineers promulgated for the purpose of making uniform the requirements for maintenance and care of the levees rightfully and finally control and fix the reserved rights of defendant; and this, as the trial court has said, by force of the very reservations themselves which are contained in the deeds it and its predecessors have executed. It is obvious that this holding may presently and in practical effect so restrict those rights as to render them of little value, but that is a situation foreshadowed in the reservations themselves.

The decree entered by the trial court and from which this appeal is taken reads as follows:

''It Is Hereby Ordered, Adjudged and Decreed . . . :

''1. That any use of the east levee of plaintiff or the right of way described in Exhibits 'A' and 'B' attached to the

complaint herein, which is inconsistent with the SACRAMENTO RIVER FLOOD CONTROL PROJECT as now or hereafter adopted, or any damaging of said levee or right of way is illegal, is a violation of the SACRAMENTO RIVER FLOOD CONTROL PROJECT and is not authorized by the reservations contained in Exhibits 'C' and 'D' attached to the complaint herein or otherwise.

"2. That defendant, SUTTER BASIN CORPORATION, LTD., a corporation, its agents, servants, employees and all persons acting by, through or under it, are hereby jointly and separately enjoined and restrained from any and all acts which injure or damage said east levee of plaintiff and the right of way located thereon by any means or in any particular, or which are inconsistent with the SACRAMENTO RIVER FLOOD CONTROL PROJECT as now or hereafter adopted, and, without limiting the generality of the foregoing, from pasturing or grazing livestock or otherwise using said right of way and levee for vehicular traffic except upon compliance with the regulations of the United States Army engineers governing the maintenance of the SACRAMENTO RIVER FLOOD CONTROL PROJECT.''

Appellant specifically argues against the propriety of the foregoing decree, as follows: ''(a) The injunction is too broad in prohibiting any and all acts which injure or damage said east levee. (b) The trial court erred in enjoining the use of the levee for pasture purposes. (c) The use for pasture purposes was not unauthorized and is not inconsistent with the use of the levee for reclamation purposes.''

In support of its first contention, appellant argues that the decree is too broad in that it restricts any and all acts which injure or damage the levee and appellant says: ''The first hoof marks on the levee, the first blade of grass bent down, the first swirl of dust from a passing car, constitute an act of contempt.'' The language of the decree is simple and clear and we do not know how better words could be found to express the clear right of respondents to have their levee protected against injury or damage by any act of appellant. We cannot suppose that acts such as appellant states would be acts of contempt, would, in a hearing charging contempt, be held to be such. ■ We must assume reasonable action of the trial court in the future in determining whether its decree has in fact been violated.

The second contention of appellant, that the trial court erred in enjoining the use of the levee for pasture purposes,

is, of course, an objection to any decree at all and is answered by what has heretofore been quoted from the opinion of the trial court. While it is true, as appellant argues, that a right of pasturage carries with it a right of entry to the land to be pastured and constitutes an estate in the land itself, yet these considerations can be freely admitted without in any wise impugning the decree appealed from. That decree, as has been said, is based upon the proposition that the limiting of the reserved rights to such exercise as from time to time may be authorized by the Army engineers is part and parcel of the existing flood control plans of the State of California and, therefore, expressly permitted by the language of the reservations. In support of its third contention that the use of the levees for pasture purposes was not unauthorized and was not inconsistent with the use of the levee for reclamation purposes, appellant's argument may be summarized as follows: That the reservations having been made when the title deeds were executed, cannot be affected by regulations of the Army engineers. Says appellant: ''We think there has been confusion in this case between the rules and between flood control plans of the State of California as referred to in the reservation of the deeds.'' What has heretofore been said obviously answers this contention. Any use of the levee for pasturage except as permitted by the regulations of the engineers is an unauthorized use.

Appellant has in its brief requested that this court take additional evidence and make such further orders as may be deemed proper under section 956a of the Code of Civil Procedure. As we read the brief, this request is predicated upon things which happened after the making of the decree appealed from, including application to the state engineer, as the responsible agent under the regulations of the Army engineers, for leave to make use of the levee for vehicular and pasturage use and the denial of the request by that officer. Appellant says the trial court found that it was entitled to these uses under permission of the state engineer and that he has arbitrarily denied such use. It asks us to appoint a master to take testimony and, having done so, that this court ''lay down the conditions under which the defendant is to use its acknowledged right.''

Since we have held herein that authority to permit the use of the levee for the desired purposes lies with the Army engineers, we obviously cannot accede to the request to take evidence and the same is denied. ■ If, as claimed, the

denial of use was arbitrary, then proof thereof must be made in the trial court in a proceeding to ascertain if respondents are abusing the court's decree. They sought and obtained a decree in equity. They have not appealed but have accepted it. That decree they may use for the lawful purpose for which it was handed down—but it may not be abused.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 20, 1954.